UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

       SHAHARA KHAN,

             Debtor,

----------------------------------------------------------------x     **MEMORANDUM & ORDER**

DEBRA KRAMER AS TRUSTEE OF THE       14−MC−1674 (PKC)
ESTATE OF SHAHARA KHAN,

             Plaintiff,

    - against –

TOZAMMEL H. MAHIA,

             Defendant.
----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Before the Court is a memorandum decision and proposed findings of fact and conclusions of law ("proposed findings and conclusions") issued by United States Bankruptcy Judge Elizabeth S. Stong regarding a motion for summary judgment filed by Plaintiff Debra Kramer ("Trustee"), in her role as Trustee of the estate of Shahara Khan ("Khan"), against defendant Tozammel H. Mahia ("Mahia"), in an adversary proceeding arising from Khan's voluntary bankruptcy petition. *In re Khan*, 10−46901−ESS, 2014 WL 4956676 (Bankr. E.D.N.Y. Sept. 30, 2014).[1] For the reasons set forth below, the Court affirms and adopts Judge Stong's proposed findings and conclusions in all respects, and affirms her decision granting partial summary judgment. The Trustee's motion for summary judgment is therefore granted in part and denied in part.

---

[1] In the United States Bankruptcy Court for the Eastern District of New York, the bankruptcy is Case No. 10−46901−ess, and the adversary proceeding is Adv. Pro. No. 11−1520−ess.

## BACKGROUND

Having reviewed the facts and descriptions of proceedings in the Bankruptcy Court contained in the "Procedural History" and "Background" sections of Judge Stong's memorandum decision and proposed findings and conclusions, the Court adopts those sections in full and otherwise presumes the parties' familiarity with the lengthy procedural history of this case in the Bankruptcy Court, this Court, and the Court of Appeals for the Second Circuit.

In brief, Khan filed a Chapter 7 bankruptcy petition on July 22, 2010. *In re Khan*, 2014 WL 4956676, at *1. By this adversary proceeding, the Trustee seeks to recover two allegedly fraudulent conveyances of funds made by Khan in 2007 to her son, Mahia. *Id.* at *1, *3. Khan, Mahia, and their relative Shamsum N. Rimi ("Rimi") held title to real property located at 87−27 110th Street, Richmond Hill, NY 11418 (the "Richmond Hill Property"), as tenants in common by a deed recorded on November 1, 2002. *Id.* at *3. Beginning on September 23, 2002, Khan held a 25% interest, Mahia held a 50% interest, and Rimi held a 25% interest in the Richmond Hill Property, which Khan and Mahia used as their principal residence. *Id.*

The first transfer at issue occurred in connection with a home equity loan in the amount of $150,000 secured by a mortgage on the Richmond Hill Property in favor of Countrywide Bank, N.A., and signed by Khan, dated January 5, 2007. *Id.* The Trustee alleges that Khan conveyed her share of the mortgage proceeds, or $37,500, for no consideration to Mahia. Mahia used $100,000 of the mortgage proceeds towards the purchase of a new home located at 101–14 102nd Street, Ozone Park, NY 11416 (the "Ozone Park Property"), and deposited the remaining $50,000 in a Citibank checking account, held solely in his name, for renovations to the Richmond Hill and Ozone Park Properties. *Id.*

2

The second transfer at issue occurred in connection with the sale of the Richmond Hill Property to Jany Sikder on April 5, 2007, which yielded net proceeds of $106,761. *Id.* The deed for that sale indicated that Khan was a titled owner of the property, but disbursement checks from the closing did not indicate that Khan received any of the sale proceeds. *Id.* at *1, *3. The Trustee alleges that Khan again transferred her share of those proceeds, or $26,690.25, for no consideration to Mahia. *Id.* at *3. After making payments to certain parties in connection with the closing, Mahia received the balance, or $38,000, of the sale proceeds. Mahia deposited those funds in his Citibank account and used them to pay for improvements to the Ozone Park Property, purchase furniture, and purchase a vehicle. Khan did not receive her share of the Sale Proceeds at the closing or thereafter. *Id.*

The Trustee commenced this action on December 3, 2011 to recover Khan's shares of the mortgage proceeds ($37,500) and the sale proceeds ($26,690.25) pursuant to New York's Debtor and Creditor Law ("NY DCL") governing constructive and actual fraudulent conveyances, the Bankruptcy Code, and a common law theory of unjust enrichment. *Id.* at *1, *3.[2] On February 7, 2012, Mahia answered the complaint and asserted counterclaims for "constitutional torts" and abuse of process. On March 24, 2012, the Trustee filed a sanctions motion against Mahia's counsel, contending that the counterclaims were baseless and made in bad faith. *Id.* at *1−2; *see Kramer v. Mahia*, 12−MC−794 DLI, 2013 WL 1629254, at *1 (E.D.N.Y. Apr. 15, 2013).

Mahia subsequently filed a motion to withdraw the reference to the Bankruptcy Court of the sanctions motion on November 19, 2012, and a motion to withdraw the reference of the adversary proceeding on December 5, 2012. The Honorable Dora L. Irizarry of the Eastern

---

[2] The Trustee's December 3, 2011 Complaint asserted claims relating to the transfer of proceeds from the sale of the Richmond Hill Property on April 5, 2007. On March 25, 2013, the Trustee filed an Amended Complaint, adding claims to avoid and recover the transfer of funds from the January 2007 mortgage. *In re Khan*, 2014 WL 4956676, at *2.

District of New York, to whom the case was assigned, denied both withdrawal motions by order dated April 15, 2013. *Kramer*, 2013 WL 1629254, at \*1. With respect to the reference of the adversary proceeding, Judge Irizarry concluded that although the Bankruptcy Court lacked authority to render a final decision on the Trustee's fraudulent conveyance claims, the Bankruptcy Court may nevertheless hear the case and recommend proposed findings to the District Court. Judge Irizarry accordingly declined to grant permissive withdrawal of the reference of the adversary proceeding. *Id.* at \*5. Mahia then appealed, which was dismissed by the Second Circuit for lack of jurisdiction. *In re Khan*, 567 F. App'x 53 (2d Cir. 2014).

On March 11, 2013, the Judge Stong issued a decision granting the sanctions motion, upon a determination that Mahia's counsel acted in bad faith by asserting counterclaims that lacked a colorable basis. *In re Khan*, 488 B.R. 515 (Bankr. E.D.N.Y. 2013). The sanctions order was affirmed by Judge Irizarry, *Dahiya v. Kramer*, 13−CV−3079 DLI, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), and by the Second Circuit, *In re Khan*, 593 F. App'x 83 (2d Cir. 2015). Of importance, the Second Circuit rejected Mahia's counsel's "sweeping argument that the very existence of bankruptcy courts violates the Appointments Clause of the United States Constitution." *Id.* at 85. The Circuit also found no abuse of discretion in the Bankruptcy Court's finding of bad faith, noting Mahia's counsel's "general pattern of groundless litigation in the bankruptcy courts, premised not on actual disputes with the actions of trustees but rather on frivolous, obstructive objections to the bankruptcy system." *Id.* at 86.

On January 31, 2014, the Trustee filed a motion for summary judgment on all 16 causes of action, which Mahia opposed. *In re Khan*, 2014 WL 4956676, at \*3. After holding hearings, receiving additional briefing, and hearing oral argument, Judge Stong rendered her memorandum decision and proposed findings and conclusions on September 30, 2014.

Because the Bankruptcy Court lacks the authority to enter final judgment on the Trustee's State law (NY DCL) fraudulent conveyance claims and common law unjust enrichment claims, Judge Stong issued her determinations regarding summary judgment on those claims in the form of proposed findings of fact and conclusions of law, which are subject to this Court's review. *Id.* at *5.   In her proposed findings and conclusions, Judge Stong recommends that summary judgment be granted on the Trustee's claims that the transfers of proceeds from both the mortgage and sale of the Richmond Hill Property were constructively fraudulent.   This recommendation is premised on Judge Stong's proposed findings of fact that: (1) both the mortgage and sale proceeds were Khan's property; (2) these proceeds were conveyed to Mahia for less than fair consideration or reasonably equivalent value; and (3) Khan was insolvent at the time of the transfers or rendered insolvent by the transfers.   *Id.* at *11−14, *16, *27−30, *32. Judge Stong accordingly proposed granting the Trustee's motion, under Bankruptcy Code § 544(b) and NY DCL § 273 for a declaratory judgment to set aside the transfers as fraudulent conveyances, and under Bankruptcy Code § 550(a) and NY DCL §§ 273 and 278, for a judgment against Mahia in the amount of the transfers. *Id.* at *54.   Conversely, Judge Stong found that disputes of material fact exist with respect to the Trustee's other theories of recovery for constructive fraud, actual fraud, and unjust enrichment. *Id.* at *16−17, *21, *32−33, *36−37. Judge Stong thus denied summary judgment on these claims, as well as the Trustee's request for attorneys' fees under NY DCL § 276-a because the Trustee has not shown a genuine dispute of material fact that the transfers were made with actual intent to hinder, delay, or defraud Khan's creditors. *Id.* at *53−54.

In addition, Judge Stong determined that the Bankruptcy Court was authorized to enter judgment on the Trustee's claims under Bankruptcy Code § 542(a) for turnover and an

accounting of the transfers. *Id.* at *5. As a consequence of her proposed findings that the Trustee is entitled to avoid the transfers as constructively fraudulent conveyances and recover the sums under the Bankruptcy Code, Judge Stong entered a decision granting summary judgement under Bankruptcy Code § 542(a), and directing Mahia to account for and deliver the mortgage and sale proceeds to the Trustee. *Id.* at *24−25, *39−40, *53.

Mahia filed objections to Judge Stong's memorandum and proposed findings on November 7 and 10, 2014, and the Trustee submitted its response on November 22, 2014.

## DISCUSSION

### I.   Legal Standards

The district court reviews *de novo* those portions of a bankruptcy judge's proposed findings of fact and conclusions of law to which any party has made timely and specific objection. 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d); *see also Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003); *In re Crysen/Montenay Energy Co.*, 240 B.R. 166, 169 (S.D.N.Y. 1999) *aff'd*, 226 F.3d 160 (2d Cir. 2000). The Court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033. This Court likewise reviews *de novo* the Bankruptcy Court's grant of summary judgment. *See, e.g.*, *In re Corcoran*, 246 B.R. 152, 158 (E.D.N.Y. 2000) (citing, e.g., *In re Blackwood Assocs.*, 153 F.3d 61, 67 (2d Cir. 1998)).

The standards applicable to a summary judgment motion under Federal Rule of Civil Procedure 56 also apply to such a motion in an adversary action before the Bankruptcy Court. *In re Corcoran*, 246 B.R. at 158 n.3; *In re DPH Holdings Corp.*, 12−CV−9292, 2013 WL 3948683, at *4 (S.D.N.Y. Aug. 1, 2013); *In re Ferraro*, 00−63241, 03−80476, 2005 WL 3555948, at *2

(N.D.N.Y. Dec. 28, 2005); *see* Fed. R. Bankr. P. 7056 (Rule 56 "applies in adversary proceedings").  As such, the summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.* ("*Liberty Lobby*"), 477 U.S. 242, 249–50 (1986).  The Trustee, as "[t]he moving party[,] bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), after which the burden shifts to Mahia as the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Liberty Lobby*, 477 U.S. at 249); *see also F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial.  *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp.*, 477 U.S. at 323.  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Liberty Lobby*, 477 U.S. at 252) (alterations in original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012).  The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Brown*,

654 F.3d at 358 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (citations and quotations omitted).  In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## II.    Timeliness of Mahia's Objections

At the outset, the Trustee correctly points out that Mahia's objections were not timely filed.  (*See* Dkt. 1−10.)  Section 157(c) of the Bankruptcy Code and Bankruptcy Rule 9033(d) mandate *de novo* review of a bankruptcy judge's proposed findings to which a party has *timely* and specifically objected.  28 U.S.C. § 157(c); Fed. R. Bankr. P. 9033(d).  The time to file objections is 14 days after service of the proposed findings of fact and conclusions of law.  Fed. R. Bankr. P. 9033(b).  Service is deemed complete upon mailing.  Fed. R. Bankr. P. 9006(e), 9033(a).  Bankruptcy Rule 9033(c) further provides that a bankruptcy judge may extend the time for filing objections "for cause" "for a period not to exceed 21 days."  Fed. R. Bankr. P. 9033(c).  Here, the Clerk of the Bankruptcy Court certified service of the memorandum and proposed findings and conclusions on the parties by mail on October 1, 2014.  (Dkt. 1−2 (Mailing Certificate).)  The time to file objections thus would have expired on October 15, 2014.  *See* Fed. R. Bankr. P. 9006(a) (Computing time).  On consent, Judge Stong granted Mahia's request for an additional 21 days to file his objections.  (Dkt 1−6.)  Accordingly, Mahia's objections had to be filed by November 5, 2014 to be considered timely.  *See* Fed. R. Bankr. P. 9006(b).  Despite having been granted an extension of time, Mahia filed his initial objection two days late, on

November 7, 2014, and filed a more complete "amended" objection and attachments on November 10, 2014.  (A.P. 11−1520−ess Dkts. 170−73.)

This late filing is problematic for Mahia because the failure to file objections within the time proscribed is "sufficient reason for finding that [defendant has] waived his objections[.]"  *In re Ionosphere Clubs, Inc.*, 94−CV−0659, 1996 WL 361531, at *1 (S.D.N.Y. June 28, 1996); *see Messer v. Peykar Int'l Co.*, 510 B.R. 31, 38 (S.D.N.Y. 2014) (defendant waived right to object to proposed findings by failing to timely object); *In re Golodetz Corp.*, 198 B.R. 441, 443 (Bankr. S.D.N.Y. 1996) (failure to timely object results in waiver of the right to *de novo* review by the district court).   In *Messer v. Peykar*, the district judge ruled that *pro se* defendants who effectively filed objections 13 days late had waived their right to object.  510 B.R. at 38.[3]  The court found that the *pro se* status of defendants did "not excuse them from complying" with bankruptcy rules because defendants had notice of the proposed findings, had been represented by counsel in the adversary proceeding, and were sophisticated parties."  *Id.*

Analogizing Bankruptcy Rule 9033 with Federal Rule of Civil Procedure 72, which governs the timeliness of objections to the recommendations of a magistrate judge, some courts have concluded that a district court retains discretion to consider bankruptcy objections out of time.  *In re Sasson Jeans*, Inc., 104 B.R. 600, 603 (S.D.N.Y. 1989) (considering objections that were filed out of time based on a showing of excusable neglect); *see Hunt v. Parkway Transp., Inc.*, 265 B.R. 561, 565 (W.D. Tex. 2001) ("[A] district judge can consider objections to a bankruptcy judge's report and recommendation, whether or not those objections were timely filed.").   *But see Infrastructure Serv. Co. v. Firestone*, 328 B.R. 804, 807 (C.D. Cal. 2005)

---

[3] The *Messer* defendants filed a notice of appeal of the bankruptcy court decision, accompanied by "designations of contents and statements of issues", prior to the deadline to file objections, and then 13 days after the time to file objections expired, they asked the Court to consider their designations as their objections.  *Messer*, 510 B.R. at 34.

(holding that under Ninth Circuit precedent, a party cannot evade Rule 9033 timeliness directions based on excusable neglect).  Although failure to timely interpose objections pursuant to Rule 72(b) has been held to constitute waiver of further judicial review of a magistrate's recommendations, *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988) (collecting cases), the district court retains discretion to review untimely objections.  *Thomas v. Arn*, 474 U.S. 140, 154 (1985); *see Hunt*, 265 B.R. at 565; *Sasson Jeans*, 104 B.R. at 603.

In this case, Mahia is represented by counsel, who specifically requested an extension to November 5, 2014 to file his objections.  Mahia has not offered any explanation for failing to comply with the extended filing deadline, nor has he attempted to show that "the circumstance responsible for the delay was one beyond his reasonable control."  *See Sasson Jeans*, 104 B.R. at 603 ("[E]xcusable neglect exists when party fails to meet obligation due to unique or extraordinary circumstances beyond the reasonable control of the delinquent party.") (citing *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 830 (S.D.N.Y. 1985); *but see Hunt*, 265 B.R. at 565 (considering objections despite untimely filing, where objections were filed only few days late, and confusion surrounding due date for objections was created by procedural complexity of bankruptcy court's consideration of motion for reconsideration, and then by court's erroneous calculation of the extension period).  Given Mahia's long history of delay in the adversary proceeding, the absence of any excuse for missing the extended deadline, and, as discussed *infra*, the repetition of an argument already rejected by the Second Circuit in this case, the Court is loathe to exercise its discretion to consider Mahia's untimely objections.  However, given the potential for an appeal in this matter, the Court considers Mahia's objections, and finds them to be without merit.

### III.   *De Novo* **Review of the Bankruptcy Court's Proposed Findings and Partial Grant of Summary Judgment**

Mahia advances a host of "constitutional" and jurisdictional challenges to the Bankruptcy Court's ability to hear this adversary proceeding.  Mahia contends that the Bankruptcy Court lacks subject matter jurisdiction and authority to propose findings, and that the general function of bankruptcy judges violates the Appointments Clause.  Mahia also asserts that the Trustee lacks standing to pursue an adversary proceeding, and that such a proceeding violates the Religious Freedom Restoration Act.  Further, Mahia objects to Judges Stong's factual findings, and maintains that: (1) the proceeds were not Khan's property; (2) the proceeds were transferred for fair consideration; and (3) Khan was neither insolvent at the time of the transfers nor rendered insolvent by the transfers.  Finally, Mahia argues that Judge Stong cannot enter a judgment directing the turnover of funds because the funds are subject to an unresolved fraudulent conveyance claim.  (Dkt. 1−8 ("Am. Obj.").)

Despite his lengthy submissions, Mahia fails to show that either Judge Stong's legal or factual analysis was erroneous.  Based on its *de novo* review of the record, the submissions of the parties, and the relevant law, the Court concludes that Judge Strong carefully and thoroughly analyzed, and correctly decided, each of the issues raised by Mahia, and therefore adopts her findings in their entirety.  Additionally, because the Court adopts Judge Stong's conclusion that the transfers constituted fraudulent conveyances under NY DCL § 273, and agrees with Judge Stong's analysis of the Trustee's claims under Bankruptcy Code § 542(a), the Court also affirms Judge Stong's grant of summary judgment for turnover and an accounting of the transfers.

#### A.  Subject Matter Jurisdiction

Mahia argues that the Bankruptcy Court lacked subject matter jurisdiction to hear the adversary proceeding because the action does not "arise under" Article III of the federal

11

Constitution.   (Am. Obj. at 18−20.)   Relatedly, Mahia objects to the Bankruptcy Court's authority under the Constitution to propose findings of fact and conclusions of law to this Court, and seeks "[i]ndependent factfinding" in the first instance by the District Court.   (*Id.* at 1−4.) Mahia is wrong on both counts.

The Bankruptcy Court's subject matter jurisdiction originates with 28 U.S.C. § 1334. Section 1334(a) grants the district court original jurisdiction over all bankruptcy cases, and § 1334(b) grants the district court original, but non−exclusive, jurisdiction over all civil proceedings arising under Title 11 of the United States Code, which concerns bankruptcy proceedings, or arising in or related to cases under Title 11.   28 U.S.C. § 1334.   Pursuant to 28 U.S.C. § 157(a), each district court has the discretion to refer to the bankruptcy court "any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11."   In this regard, this District has a Standing Order of Referral, dated December 5, 2012, which automatically refers to the Bankruptcy Court of the Eastern District of New York all cases in this district arising under Title 11, or related to a Title 11 bankruptcy case.

Judge Stong correctly concluded that the Bankruptcy Court has jurisdiction over each of the Trustee's claims as matters that are "related to" a bankruptcy proceeding.   *In re Khan*, 2014 WL 4956676, at  *4.   In reaching this conclusion, Judge Stong reasoned that the mortgage and sale proceeds that the Trustee seeks to recover would inure to the benefit of the bankruptcy estate, which would otherwise be devoid of assets.   *Id.*   "[L]itigation falls within the 'related to' jurisdiction of the bankruptcy court" if "its outcome might have any 'conceivable effect' on the bankrupt estate."   *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). Recovery of a portion of the amount that Khan owes to her creditors would have a substantial effect on the estate in bankruptcy.   *See In re Conlon*, 9−CV−599, 95−64406, 96−7023A 1998

WL 360255, at *2 (N.D.N.Y. June 30, 1998). Thus, Judge Strong correctly found the adversary proceeding to be reasonably related to Khan's bankruptcy and that the Bankruptcy Court, therefore, has jurisdiction over the Trustee's claims in that proceeding.

Consistent with Supreme Court authority, this Court conducts *de novo* review of the Bankruptcy Court's proposed findings on any claims for which the Bankruptcy Court lacks final adjudicative authority. Title 28 of the United States Code divides bankruptcy proceedings into core proceedings and non-core proceedings. Core proceedings are those that arise in the bankruptcy case or arise under Title 11. 28 U.S.C. § 157(b)(2), *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011). Non-core proceedings—*i.e.*, a claim that is *not* statutorily designated as "core", but is "otherwise related" to a bankruptcy case—are synonymous with "related to" proceedings. 28 U.S.C. § 157(c)(1); *Stern*, 131 S. Ct. at 2605; *In Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2172 (2014). In *Stern*, the Supreme Court identified, for the first time, a category of claims that are statutorily core claims, but as to which the bankruptcy court, as a non-Article III court, lacked the Constitutional authority to enter a final judgment. 131 S. Ct. at 2620 ("The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.") In *Arkinson*, the Supreme Court ruled that *Stern* claims could proceed as non–core claims within the meaning of 28 U.S.C. § 157(c) — that is, a bankruptcy court is not constitutionally authorized to enter final judgment, but may "nevertheless . . . issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court." 131 S. Ct. at 2168, 2173.

In this action, District Judge Irizarry previously declined to withdraw the reference of the adversary proceeding to the Bankruptcy Court. Applying the *Stern* analysis, Judge Irizarry

determined that the fraudulent conveyance action is considered "core" under Section 157 of the Bankruptcy Code, but "does not fall within any of the *Stern* exceptions" and therefore "the Bankruptcy Court may not enter a final decision." *Kramer*, 2013 WL 1629254, at *4. However, Judge Irizarry found that the Bankruptcy to Court could "hear the [fraudulent conveyance] case in the first instance and recommend proposed findings of fact and conclusions of law" to the district court. *Id.* at *5 (quoting *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 49 (S.D.N.Y. 2013)). This approach is consistent with this District's Standing Order, which provides that the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court in all core matters that it cannot finally determine. Mahia has pointed to no controlling or persuasive authority suggesting that it is constitutionally impermissible for the Bankruptcy Court to propose findings for the district court's *de novo* review.

In view of the foregoing, Judge Stong correctly found that the Bankruptcy Court may not finally decide the Trustee's State law fraudulent conveyance and common law unjust enrichment claims. *In re Khan*, 2014 WL 4956676, at *5, *45. Judge Stong thus appropriately proposed findings of fact and conclusions of law for this Court's review as to these matters. *See In re Lyondell Chem. Co.*, 467 B.R. 712, 724 (S.D.N.Y. 2012) (Bankruptcy Court may enter proposed findings of fact and conclusions of law in fraudulent conveyance cases). The Court further agrees with Judge Stong's conclusion that the Trustee's claims for turnover and an accounting of the disputed transfers arise under Bankruptcy Code § 542(a), and are thus "core matters" stemming from the bankruptcy itself, as to which the Bankruptcy Court has constitutional authority to enter final judgment. *In re Khan*, 2014 WL 4956676, at *5, 45; *see also In re Soundview Elite Ltd.*, 13−13098, 2014 WL 2998529, at *3 (S.D.N.Y. July 3, 2014) ("Not

14

surprisingly, 'the reported post−*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions.'") (quoting *Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 850 (Bankr. S.D.N.Y. 2013)).

Mahia asserts a third objection to the Bankruptcy Court's jurisdiction, related to the constitutional standing of the Trustee.  Mahia objects that although the Trustee may have statutory standing to pursue this adversary action under the Bankruptcy Code, the Trustee cannot show that it has suffered "injury-in-fact" to establish Article III standing because a creditor, rather than the estate or the Trustee, is the only party that has suffered injury caused by the allegedly fraudulent transfers.  (Am. Obj. at 15−18.)  The Court disagrees.

The doctrine of standing is rooted in Article III of the United States Constitution, and limits federal courts to deciding cases or controversies, and requires that a party assert his or her own legal rights and interests.  *Wright v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000).  If a plaintiff "lack[s] Article III standing, a court has no subject matter jurisdiction to hear [her] claim."  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).  To establish Article III standing, a plaintiff must "have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision."  *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009); *accord Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (requiring the "three familiar elements of standing: injury in fact, causation, and redressability").

In bankruptcy proceedings, a trustee's standing "coincides with the scope of the powers the Bankruptcy Code gives a trustee."  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114,

118 (2d Cir. 1991).  Thus, a trustee must have "power to assert a claim" as "one belonging to the bankrupt estate" or in some circumstances, on behalf of the estate's creditors, to satisfy the requirement that "legal rights asserted must be his own."  *Id.*  Notably, "the issue of standing does not [generally] arise when bankruptcy trustees . . . seek to avoid a fraudulent transfer made by the" debtor.  *Barnet v. Drawbridge Special Opportunities Fund LP*, 14−CV−1376, 2014 WL 4393320, at *15 (S.D.N.Y. Sept. 5, 2014).  This is because Section 544(b) of the Bankruptcy Code confers upon "trustees the ability to stand in the shoes of the . . . estate's unsecured creditors and 'avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . .'"  *Id.* (quoting 11 U.S.C. § 544(b)(1)); *see also Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 289–91 (E.D.N.Y. 2012) (plaintiff had standing to assert fraudulent conveyance where it stood in the shoes of guarantors, who were "creditors" as defined in NY DCL); *Lippe v. Bairnco Corp.*, 230 B.R. 906, 914–915 (S.D.N.Y. 1999) (same).

The "applicable law" upon which the Trustee relies is set forth in sections of the NY DCL that permit recovery of a fraudulent transfer under various theories.  Since the Trustee here is authorized to stand in the shoes of an unsecured creditor, and asserts those legal rights, Judge Stong correctly found that the Trustee's standing under the Bankruptcy Code comports with standing under the federal Constitution.[4]  Although Mahia takes issue with the "technical" extension of standing by operation of statute (*see* Am. Obj. at 16−17), Mahia has not provided any authority that suggests that a trustee who has established standing under the Bankruptcy

---

[4] Mahia does not specifically object to Judge Stong's proposed finding that the Trustee has satisfied statutory standing.  The Court has reviewed the record and relevant law, and adopts Judge Stong's proposed finding that the Trustee has established Chapter 7 standing by showing the existence of an identifiable creditor at the time of the two transfers as to whom the transfer was voidable under New York state law.  *In re Khan*, 2014 WL 4956676, at *48.

Code still lacks Article III standing.  The Court accordingly perceives no error in Judge Stong's legal analysis or conclusion that the Trustee has the requisite standing to bring this adversary proceeding, and adopts Judge Stong's findings.

### B.  Appointments Clause

Mahia also argues that the Appointments Clause of Article II of the United States Constitution bars the Bankruptcy Court from proceeding without consent of the parties, because bankruptcy judges are not appointed by the President with the advice and consent of the Senate. (Am. Obj. at 13−14.)  This objection may be dispatched summarily, as it reprises an argument that was already rejected by the Second Circuit in its order affirming sanctions against Mahia's counsel.  *See In re Khan*, 593 F. App'x at 85 ("We . . . reject [the] sweeping argument that the very existence of bankruptcy courts violates the Appointments Clause of the Constitution.") (citing *Edmond v. United States*, 520 U.S. 651, 663 (1997) (stating it is "evident that 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate")).[5]  The Court accordingly adopts Judge Stong's conclusion, which has been affirmed by the Second Circuit, that the Appointments Clause does not prevent the Bankruptcy Court from hearing this proceeding.  *In re Khan*, 2014 WL 4956676, at *46.

### C.  Religious Freedom Restoration Act

Mahia argues that the Bankruptcy Court's rejection of his argument that the Trustee's adversary proceeding runs afoul of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C.

---

[5] Mahia's repetition of an argument that the Second Circuit has previously rejected *in this case* — and for which Mahia's counsel has already been sanctioned — certainly invites additional sanctions.  Although the Court declines to do so at this time, Mahia and his counsel are cautioned that the continued assertion of plainly frivolous and/or previously rejected arguments as a tactic to delay and frustrate the bankruptcy proceedings may well result in sanctions.

§ 2000bb, *et seq.*, was erroneous, and based on an unduly narrow understanding of that Act's scope.  Mahia maintains that by forcing him to account for his contributions to his mother, the Trustee's suit substantially burdens a fundamental religious precept in Mahia's Islamic faith that a son must provide for his mother and that the two are part of one family unit rather than distinct individuals.  (Am. Obj. at 4−12.)  According to Mahia, the Trustee's "overtly zealous mission" on behalf of an unsecured creditor is insufficient to meet RFRA's requirement that the government demonstrate a compelling interest before restricting a citizen's religious practice. (*Id.* at 11.)

RFRA provides that the "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person" "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering  that compelling government interest."  42 U.S.C. § 2000bb−1(b).  Moreover, the government is held to such strict scrutiny "even if the burden results from a rule of general applicability."  *Id.*  "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)); *see also Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007) ("Supreme Court precedents teach that a substantial burden on religious exercise exists when an individual is required to 'choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'") (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).

Here, Mahia faces no such "stark choice between a basic benefit and a core belief." *Newdow v. Peterson*, 753 F.3d 105, 109 (2d Cir. 2014).  As Judge Stong found, while there is no

reason to doubt the sincerity of Mahia's religious beliefs, the adversarial proceeding does not constitute a substantial burden on those beliefs. *In re Khan*, 2014 WL 4956676, at *47. Khan voluntarily filed for bankruptcy to obtain relief from her creditors. Through the adversarial proceeding, the Trustee seeks to recover Khan's share of proceeds from the mortgage and sale of the Richmond Hill property for Khan's bankruptcy estate in satisfaction of her debts. Mahia has failed to cogently explain how the requested relief imposes a substantial burden on his core belief that he provide support to his mother and that the family functions as a single economic unit.[6]

Mahia's RFRA argument is that defending against the Trustee's claims forces him to abandon a religious belief that forbids him from providing an accounting of his financial support of his mother. (Am. Obj. at 9.) In his objection, Mahia asserts:

> The trustees law suit is demand of accounting as to what the Son(defendant) has done for his mother (debtor). Son is being pitted against the mother. Trustee says that the mother name was on the deed of the house and her name was a contribution and son must provide accounting or return the money. If the son provides a list of things that he has done to defend his case, it definitively violates his religious belief. Nothing done for the mother is enough, next to God is his mother, or higher. To compel a son to provide accounting violates the basic religious belief.

*Id.* (typographical errors in original).

Yet, seemingly in contravention of these religious precepts, Mahia asserted in his opposition to the Trustee's claims in the adversary proceeding that: (1) he refinanced the mortgage on the Richmond Hill Property in 2004; (2) the $100,000 in proceeds from the refinancing was deposited in his mother's Chase account; (3) $45,000 of these proceeds was

---

[6] Indeed, Mahia's claim that in his religion, "what is [his mother's] belongs [her] family and what . . . belongs to [her] family belongs to [her]", *see In re Khan*, 2014 WL 4956676, at *47 (citing Khan Aff. ¶10), is belied, to an extent, by the specific division of ownership memorialized in the deed for the Richmond Hill Property — Khan (25%), Mahia (50%), and Rimi (25%), *id.* at *3.

used to pay his mother's credit card debt; and (4) the rest of the proceeds were used to cover his mother's other living expenses.  (*Id.*at 27, 30, 41−43); *In re Khan*, 2014 WL 4956676, at *12, *13, *28.  In his objections, Mahia asserts that Khan's credit card debt and her other living expenses should be considered "antecedent" debt that Khan discharged through the 2007 transfers to Mahia.  (Am. Obj. at 26, 41−42, 49.)

Mahia insists that requiring him to give an accounting of his financial dealings with, or on behalf of, his mother would violate his religious beliefs and thereby substantially burden his practice of religion.  (*Id.* at 4−12.)  However, as Judge Stong found, Mahia has not shown that he is being forced to "choose between following the precepts of his religion or accepting a benefit under law.  Nor has he demonstrated that he is under 'substantial pressure . . . to modify his behavior' or 'to violate his beliefs.'"  *In re Khan*, 2014 WL 4956676, at at *47 (quoting *Jolly*, 76 F.3d at 477).)  Mahia need not personally give an accounting in order to make out his defense to the Trustee's claims; his attorney can simply provide records maintained by third parties, such as the banks or mortgage company, to prove Mahia's claim that the mortgage and sale proceeds were used to pay for Khan's "antecedent" debts.  The documents speak for themselves, thus absolving Mahia of any obligation to do so.[7]  Furthermore, Mahia's argument that this adversary proceeding "pit[s] son against the mother" is fundamentally incorrect, in that Mahia's and his mother's interest are aligned in this action.  (Am. Obj. at 9.)  Finally, to the extent Mahia is claiming that the act of obtaining the financial records to support his defense would substantially burden his exercise of religion, the Court rejects that as completely unsupported and meritless.

Accordingly, the Court finds that the adversarial proceeding does not pose a substantial burden on Mahia's religious exercise, and adopts Judge Stong's proposed findings.

---

[7] If Mahia was concerned about appearing "humble, taciturn" about what he provided to his mother (Am. Obj. at 6, 10), he could have sought confidentiality protections for the documents.

### D.  Joinder

Mahia objects that it is appropriate to dismiss this action under Federal Rule of Civil Procedure 19 because the Bankruptcy Court ignored the fact that Abu Taher ("Taher"), whom Mahia claims is a co−owner of the Ozone Park Property, is a necessary defendant.  (Am. Obj. at 21−23.)   Federal Civil Rule 19, made applicable to this adversary proceeding by Federal Bankruptcy Rule 7019, governs the required joinder of parties.  Fed R. Civ. P. 19; Fed. R. Bankr. P. 7109; *see Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000); *Underpinning & Found. Skanska, Inc. v. Berkley Reg'l Ins. Co.*, 262 F.R.D. 196, 200 (E.D.N.Y. 2009).  Rule 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join a party.  Fed R. Civ. P. 19.  First, the Court must determine whether the party qualifies as a "necessary" party whose joinder is feasible under Rule 19(a).  *Viacom*, 212 F.3d at 724; *see Provident v. Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124 (1968) ("'Persons having an interest in the controversy, and who ought to be made parties . . . are commonly termed necessary parties . . . .'") (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1854)).  Second, if the Court makes a threshold determination that joinder of an absent party is necessary is not feasible, the Court must next determine whether the party is "indispensable."  *Viacom*, 212 F.3d at 725.

Under Rule 19(a), a "required" party is one whose participation is so important that the party must be joined so long as he is "subject to service of process" and joinder "will not deprive the court of subject-matter jurisdiction."  Fed. R. Civ. P. 19(a)(1); *see Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 131−32 (2d Cir. 2013).  A party is necessary under Rule 19(a) where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b).  *Viacom*, 212 F.3d at 724; *see Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990).

Applying this framework, Judge Stong concluded that Taher was not a necessary party under Rule 19.  *In re Khan*, 2014 WL 4956676, at *50.  The Court agrees with, and adopts, this conclusion.  Here, the Trustee seeks to recover Khan's share of cash proceeds from a mortgage and sale, all of which allegedly where transferred to Mahia.  As the Trustee states, neither the documents nor the testimony indicates that Taher received any Khan's funds or her interest in the Richmond Hill Property.  (Dkt. 1−10 ¶ 18.)  It thus follows that if the Trustee succeeds on her claims to recover those sums, she may obtain complete relief against Mahia alone.[8]  In other words, Taher's absence will not prevent the Trustee from obtaining complete relief from Mahia through a money judgment.

In addition, Rule 19(a)(1)(B) does not require the joinder of Taher.  Rule 19(a)(1)(B)(i) focuses on prejudice to the absent party if the litigation proceeds in that party's absence.  Fed. R. Civ. P. (a)(1)(B)(i).  Mahia fails to explain why Taher would be bound by a determination avoiding the initial transfer of funds between Khan and Mahia, or could not litigate that issue in the future.  Hence, there is no basis to conclude that Taher will be prejudiced if this action

---

[8] To the extent that Taher received any funds from Khan's share of the proceeds through a subsequent transfer from Mahia, the Trustee would first have to prevail against Mahia before initiating an action against Taher.  *See* 11 U.S.C. § 550.

proceeds in his absence.  Finally, Taher is not necessary under Rule 19(1)(B)(ii), which focuses on whether an existing party, here Mahia, will be subjected "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(1)(B)(ii).  Mahia has not identified any inconsistent obligation that he might face if Taher is not joined as a party.  The Bankruptcy Court thus correctly determined that Mahia has not shown how Taher was impaired in his ability to protect his interests, or that Mahia was at risk of inconsistent obligations in the absence of Taher as a defendant.  *In re Khan*, 2014 WL 4956676, at \*50.

### E.  Section 341 Meeting

Mahia objects that the Trustee may not maintain this adversary proceeding because its conduct of the § 341 meeting of creditors denied Khan her due process rights by failing to examine Khan to ensure that she was aware of the potential consequences of seeking a discharge of her debts, and failing to advise Khan of her ability to file a petition under another chapter of the Bankruptcy Code.  (Am. Obj. at 48−49.)  The Court rejects these arguments, and adopts the Bankruptcy Judge's findings and conclusions on this issue.

The requirement for a creditors' meeting is set forth in § 341(a) of Title 11, which provides that "[w]ithin a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors."  11. U.S.C. § 341(a). Section 341(d) requires a trustee, prior to the conclusion of the § 341 meeting, to examine a debtor to ensure that she is aware of the potential consequences of seeking a discharge, the ability to file a petition under different chapters of the Bankruptcy Code, the effect of receiving a discharge, and the effect of reaffirming a debt under § 524(d).  *Id.* § 341(a); *see In re Bruckman*, 413 B.R. 46, 52 (Bankr. E.D.N.Y. 2009).

Even accepting Mahia's contention that the Trustee's conduct of the § 341 meeting was deficient, the Court agrees with Judge Stong that Mahia failed to provide supporting authority for his argument that a flawed Section 341 meeting is a defense to the Trustee's claims. *In re Khan*, 2014 WL 4956676, at *51. Indeed, at least one bankruptcy judge in this District has explicitly rejected an argument that a bankruptcy case should be dismissed based on a trustee's refusal to conduct a § 341 meeting or otherwise comply with § 341. *In re Bruckman*, 413 B.R. at 52 (noting that the debtor did not provide any authority to support dismissal of a Chapter 7 case on this basis). Judge Stong also noted that the more appropriate means to seek redress for a trustee's violations of § 341 may be to file a complaint to the United States Trustee. *In re Khan*, 2014 WL 4956676, at *51.

Moreover, the Court agrees with Judge Stong's finding that Khan, in fact, "received information about the different forms of bankruptcy that are available to individuals", based on Khan's execution and filing of a "Notice to Individual Consumer Under § 342(b) of the Bankruptcy Code," which provides basic information about the chapters of the Bankruptcy Code that are available to individual consumer debtors. *Id.* The record further supports Judge Stong's finding "that it is not likely that any chapter other than Chapter 7 would have been of assistance to the Debtor [Khan]," since her bankruptcy petition indicated that she had no regular income. *Id.* The Court thus adopts the Bankruptcy Court's proposed finding that any deficiencies in the § 341 meeting were immaterial and do not prevent the Trustee from proceeding.[9]

---

[9] Mahia's objection that the Bankruptcy Judge incorrectly stated that Khan did not request an interpreter at the Section 341 hearing does not alter this conclusion. (*See* Am. Obj. at 47−48.) The transcript of the § 341 meeting reflects that Khan requested and obtained interpretation. (Dkt. 1−7 at 324−37.) This fact only supports Judge Stong's finding that any deficiencies in the § 341 meeting do not provide a defense to the Trustee's claims. The Court also rejects Mahia's suggestion that this erroneous finding betrays a lack of neutrality that disqualifies the Bankruptcy

## F.  Fraudulent Conveyances

Bankruptcy Code § 544(b)(1) permits the Trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]"  11 U.S.C. § 544(b)(1).  The Trustee asserts several causes of action seeking to avoid and recover the transfers as constructively fraudulent conveyances pursuant to NY DCL §§ 273, 274, 275, and 278, and Bankruptcy Code §§ 544 and 550.  NY DCL §§ 273, 274, and 275 set forth three distinct paths to recover a constructively fraudulent transfer.  To prevail on these claims, the Trustee bears the burden of showing by a preponderance of the evidence that (1) the debtor's property was transferred, (2) the transfer was made without fair consideration, and (3) one of the following conditions applies:

> (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

*Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43, 53 (2d Cir. 2005); *Schneider v. Barnard*, 508 B.R. 533, 548 (E.D.N.Y. 2014).

NY DCL § 278 addresses the rights of creditors whose claims have matured.  It provides:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> > a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
> >
> > b. Disregard the conveyance and attach or levy execution upon the property conveyed.

---

Judge, or that any misrepresentation by the Trustee on this matter indicates bad faith.  (*See* Am. Obj. at 48.)

For purposes of NY DCL § 278, a "'[c]onveyance includes every payment of money [or] . . . transfer[.]'" NY DCL § 270.

Similar to NY DCL § 278, Bankruptcy Code § 550 addresses the liability of a transferee of an avoided transfer, and provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>>
>> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

Mahia objects to Judge Stong's proposal that the Court grant summary judgment on the Trustee's claims to set aside the two transfers at issue under NY DCL § 273 and Bankruptcy Code § 544(b), and recover their value under NY DCL § 278 and Bankruptcy Code §§ 544(b) and 550(a). Mahia also objects to Judge Stong's proposed findings that the proceeds from the mortgage and sale of the Richmond Hill Property were Khan's property, that Khan did not receive fair consideration for transferring the proceeds, and that Khan was insolvent at the time of the transfers or was rendered insolvent by the transfers. (Am. Obj. at 24−27, 39−47, 49−50.) The Court has reviewed Judge Stong's recommended findings on these issues *de novo*, and fully agrees with her analysis and conclusions. Accordingly, the Court grants summary judgment to the Trustee to set aside both transfers under NY DCL § 273 and Bankruptcy Code § 544(b), and recover their value under NY DCL § 278 and Bankruptcy Code §§ 544(b) and 550(a).

1.   <u>Transfer of Khan's Property</u>

Judge Stong found that the proceeds from the mortgage and sale of the Richmond Hill Property should be deemed property of Khan's bankruptcy estate because Khan held legal and equitable interests in the property. *In re Khan*, 2014 WL 4956676, at *11, *27. This conclusion is fully supported by the record, which indicates that Khan executed the deed conveying the Richmond Hill property from previous owners to herself, Mahia, and Rimi, and was named on the deed to the Richmond Hill Property as a 25% owner. *Id.* at *11. Mahia does not dispute the fact that Khan was named on the deed, but contends that Khan only had "bare legal title" and did not exercise control of the property. (Am. Obj. at 24−26, 45.) Mahia highlights, in particular, that Khan did not fund the purchase of the home, make any mortgage payments, claim any mortgage payments on her tax returns, and was completely dependent on Mahia for financial support. (*Id.* at 49−50.)

As previously discussed, a fraudulent conveyance claim requires a finding that the transfer was a transfer of the debtor's property. The commencement of a bankruptcy case creates an estate pursuant to Bankruptcy Code § 541(a), and the definition of property of the estate is broad. Under § 541(a), the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a) (1). Further, "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property[.]" *Id.* § 541(d). In other words, "the bankruptcy estate does not include property of others in which the debtor has some minor interest such as a lien or bare legal title." *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989) (citation and internal marks omitted).

The facts presented in this case support the conclusion that beyond simply having her name on the deed, Khan exercised legal and equitable control over the Richmond Hill property and the proceeds from the mortgage and sale of that property.  Significantly, Khan signed the documents granting a mortgage to Countrywide Mortgage together with Mahia and Rimi.  *In re Khan*, 2014 WL 4956676, at *19.  Khan also signed the deed of sale conveying the Richmond Hill Property to Sikder.  *Id.* at *22, *27.  The Court agrees with Judge Stong that evidence that Khan did not personally perform all obligations related to ownership, such as making mortgage payments, or claim benefits, such as tax deduction, were insufficient to raise an issue of fact as to whether the conveyed mortgage and sale proceeds were Khan's property.  *Id.*

The Court has also considered Mahia's other arguments — to the effect that Mahia viewed the Richmond Hill Property as the family's property, that Khan only indirectly received her share of the mortgage and sale proceeds because Mahia supported her economically, and that the family was a victim of mortgage fraud (*see* Am. Obj. at 45−46, 49−50) — and concludes that none of these raise an issue of fact whether the transfers may properly be considered Khan's property.  *See In re Khan*, 2014 WL 4956676, at *20, *27, *35.

2.  Fair Consideration

Mahia further objects to the Bankruptcy Court's proposed finding that Khan did not receive fair consideration for the two transfers.  (Am. Obj. at 27, 43.)  The NY DCL provides that fair consideration is given for property:

(a) When in exchange for such property . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

(b) When such property . . . is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property.

NY DCL § 272.  As suggested by the language of the statute, fair consideration under New York Law "has two components—the exchange of fair value and good faith—and both are required." *SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*, 12−CV−7280, 2013 WL 5366373, at *9 (S.D.N.Y. Sept. 25, 2013).  The "good faith" at issue under § 272 is that of the transferee, as opposed to the transferor, as in the case of actual fraud under § 276.  *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995).  While "dollar-for-dollar equivalence" is not required, the value of the consideration may not be "'disproportionately small' as compared to the value of the transferred property."  *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003) (quoting *In re Tesmetges*, 85 B.R. 683, 696–97 (Bankr. E.D.N.Y. 1988)).

"[C]ourts view intrafamily transfers made without any signs of tangible consideration as presumptively fraudulent", which shifts the burden of persuasion to a transferee to come forward with evidence sufficient to demonstrate the adequacy of consideration given.  *United States v. Alfano*, 34 F.Supp.2d 827, 845 (E.D.N.Y. 1999); *see Hirko v. United States*, 03−CV−4741, 2006 WL 681207, at *3 (E.D.N.Y. Mar. 16, 2006).  Where "a transferee has given equivalent value in exchange for the debtor's property, the "the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing Corp.*, 48 F.3d at 636; *see* NY DCL § 278(1) ("[w]here a conveyance  . . . is fraudulent as to a creditor, such creditor" may set aside or disregard that conveyance "against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase").

According to Mahia, Judge Stong's proposed finding overlooks the fact that Khan received cognizable consideration in the form of love and affection, care, and lodging.  (Am. Obj. at 43.)   This is incorrect.   Judge Stong credited evidence that Mahia contributed

significantly to his mother's care and financial support since at least 2002, well before the two

entered into the Countrywide Mortgage and sold the Richmond Hill Property in early 2007, and

that Mahia undertook to support his mother from a sense of family, moral, and cultural duty.  *In*

*re Khan*, 2014 WL 4956676, at *12, *28.  However, New York courts have specifically held that

love and affection do not amount to consideration for transfers among family members.  *See*

*Hirko*, 2006 WL 681207, at *3 (citing cases); *Cadle Co. v. Newhouse*, 98−CV−5945, 2000 WL

1721131, at *5 (S.D.N.Y. Nov. 16, 2000) (citing cases); *see also St. Teresa's Nursing Home v.*

*Vuksanovich,* 702 N.Y.S.2d 92, 92 (N.Y. App. Div. 2000) ("family affection which the

defendants claim formed the consideration for the intrafamily conveyances does not constitute

'fair consideration' for purposes of [NY DCL]") (citations omitted); *Apple Bank for Savings v.*

*Contaratos*, 612 N.Y.S.2d 51, 51 (N.Y. App. Div. 1994) (holding that love and affection do not

constitute fair consideration for transfer of property for purposes of determining whether

conveyance was fraudulent); *Marine Midland Bank v. Stein*, 433 N.Y.S.2d 325, 327 (N.Y. Sup.

Ct. 1980) (finding that love and affection as consideration for a transfer "is insufficient as a

matter of law" under NY DCL).  Bankruptcy courts have similarly determined that bonds of love

and affection do not amount to consideration for transfers among family members.  *See, e.g.*, *In*

*re 375 Park Ave. Assocs.*, 182 B.R. 690, 694 (Bankr. S.D.N.Y.1995) ("a promise for love and

affection  . . . does not constitute consideration") (citation omitted).

    Judge Stong also considered the significant financial support that Mahia provided his

mother prior to the 2007 transfers, *e.g.*, "medicine to food to shelter",[10] but also noted that Mahia

---

[10] While Judge Stong credited Mahia's claims that $45,000 of the mortgage proceeds was
deposited into Khan's bank account and used to pay Khan's creditors, and that Mahia otherwise
supported his mother financially for many years, as previously discussed, Mahia did not present
any admissible evidence to support these claims.  *In re Khan*, 2014 WL 4956676, at *12, *13,
*28.

"undertook to support his mother from a sense of family, moral, and cultural duty, and not to satisfy a legal obligation." *In re Khan*, 2014 WL 4956676, at *12, *28. Judge Stong accepted Mahia's contention that Mahia, Khan and Rimi "functioned as an economic unit in the nature of an extended family." *Id*. However, as Judge Stong properly concluded, "[t]his does not amount to conveying property or value in exchange for the [transfers at issue], nor does it create an 'antecedent debt.'" *Id*. Accordingly, she found that Mahia had failed to show a genuine dispute as to a material fact that the transfers were made for less than fair consideration or that they discharged an antecedent debt that Khan owed Mahia. *Id*. at *13, *28.

The Court agrees with, and accordingly adopts, Judge Stong's findings.

### 3.  Insolvency

To succeed on a fraudulent conveyance claim, the Trustee must establish a third element, either that (i) the debtor was insolvent when the transfer was made or was rendered insolvent by the transfer, or (ii) the debtor was engaged in or about to engage in business for which her remaining property constituted an unreasonably small capital, or (iii) the debtor intended or believed that she would incur debts beyond her ability to pay as they matured. *Sharp*, 403 F.3d at 53. Judge Stong proposes a finding that the Trustee established that there was no genuine issue of material fact that Khan was insolvent when she transferred the mortgage and sale proceeds, or that she was rendered insolvent by the transfers. *In re Khan*, 2014 WL 4956676, at *14, *30. Mahia objects that Khan was not insolvent at the time of the transfers or was not made insolvent thereby. In this regard, Mahia again maintains that the Bankruptcy Judge ignored the fact that Khan received $100,000 to pay her credit card debt and expenses from the 2004 refinance. He also asserts that at the time of the transfers, Khan had equity in the Richmond Hill Property. (Am. Obj. at 39−43.)

Both the NY DCL and Bankruptcy Code define insolvency. NY DCL § 271 provides that "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." *See Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 445 (S.D.N.Y. 2014) ("insolvency is present when the fair value of the debtor's salable assets is less than the amount required to pay existing debts as they become due") (citations and internal marks omitted). The "operative reference point for determining insolvency is the time at which the transfer took place[.]" *Id.* (citation and internal quotation mars omitted.) A trustee need not "adduce formal evidence such as testimony from bankruptcy proceedings or balance sheets to demonstrate" a debtor's insolvency. *Ostashko v. Ostashko*, 00−CV−7162, 2002 WL 32068357, at *25 (E.D.N.Y. Dec. 12, 2002). Insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming this presumption is on the transferee. *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, 792 F. Supp. 2d 645, 651 (E.D.N.Y. 2011); *In re Manshul Constr. Corp.*, 97−CV−8851, 99−CV−2825, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 30, 2000).

Applying these principles, Judge Stong correctly concluded that Khan was presumptively insolvent at the time of the transfers based on evidence, as previously discussed, that Kahn made an intra-family transfer of her shares of the mortgage and sale proceeds to her son for less than fair consideration and not on account of an antecedent debt. *In re Khan*, 2014 WL 4956676, at *14, *30. In the face of this evidence, it was incumbent on Mahia to come forward with evidence to rebut the presumption of insolvency. As Mahia has failed to offer any rebuttal evidence, the Court adopts Judge Stong's finding that Khan was insolvent at the time of the two transfers at issue.

## G.  Grant of Summary Judgment on Turnover and Accounting Claims

Judge Stong issued a decision granting summary judgment on the Trustee's claims under Bankruptcy Code § 542(a), seeking a judgment directing Mahia to account for and turnover $37,500, representing Khan's share of the mortgage proceeds, and $26,690.25, representing Khan's share of the sale proceeds.  *In re Khan*, 2014 WL 4956676, at *2, *21−25, *37−40, *53. Mahia objects on the basis that turnover is not available to the Trustee where there is a controversy on the proper ownership of the property, and here, the funds at issue are challenged in the instant adversary action as fraudulently conveyed.  (Am. Obj. at 44.)

Bankruptcy Code § 542(a) requires a non-custodian third-party to turnover property if it can be used by the trustee under Bankruptcy Code § 363 or exempted by the debtor under Bankruptcy Code Section 522.  11 U.S.C. § 542(a).  Accordingly, to recover on her claims under Section 542(a), the Trustee must establish three elements: (1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate.  *Id.; see Livecchi v. Gordon*, 11−CV−6178L, 2011 WL 6148627, at *2 (W.D.N.Y. Dec. 9, 2011).  The Court agrees with Judge Stong's analysis and conclusion that there was no genuine dispute that the proceeds were in Mahia's possession, custody, or control, that they were the property of Kahn's bankruptcy estate that the Trustee could use, sell, or lease, and that they had more than inconsequential value to Khan's bankruptcy estate.  *In re Khan*, 2014 WL 4956676, at *22−25, *38−40.

Relevant to Mahia's objection, the Bankruptcy Court correctly observed that "relief under Section 542 is not available where the transfer is the subject of a trustee's pending claim of fraudulent conveyance, and that claim is disputed and has not been resolved by the court[,]" and

that "the Trustee is only entitled to one recovery." *Id.* at \*22, \*37; *see also In re Teligent, Inc.*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (noting that "property that has been fraudulently . . . transferred does not become property of the estate until it has been recovered" and that "§ 542(b) cannot be used to recover a disputed pre-petition debt") (citing cases). Here, the Bankruptcy Court granted summary judgment on the turnover claims based on its findings that "the Trustee is entitled to avoid [the transfers] under NY DCL [§] 273 and Bankruptcy Code [§] 544(b), and recover the [proceeds] under Bankruptcy Code [§] 550." *In re Khan*, 2014 WL 4956676, at \*24, \*39. Since this Court adopts these findings, the ownership of the conveyed funds from the mortgage and sale of the Richmond Hill property is no longer a disputed issue. Mahia's objection that the proceeds cannot be subject to turnover because they are the subject of an outstanding fraudulent transfer claim is therefore unavailing, and the Court affirms Judge Stong's grant of summary judgment.

Finally, having reviewed Judge Stong's thoroughly considered and carefully reasoned memorandum and proposed findings, the objections and responses of the parties, as well as the applicable law, the Court adopts all other portions of Judge Stong's proposed findings not specifically objected to by Mahia and which have not otherwise been discussed in this Memorandum & Order.

## CONCLUSION

For the foregoing reasons, the Court affirms and adopts Judge Stong's Memorandum Decision and Proposed Findings of Fact and Conclusions of Law in all respects. As recommended by Judge Stong, the Court orders that the Trustee's motion for summary judgment is granted in part and denied in part. The Clerk of Court is respectfully requested to enter judgment and terminate this action.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated:  September 30, 2015
         Brooklyn, New York